Argued and submitted November 9, 2010, decision of Court of Appeals and
judgment of circuit court affirmed March 10, 2011

STATE OF OREGON,
*Respondent on Review,*

*v.*

EDWARD HARVEY STOKES,
*Petitioner on Review.*

(CC040431760; CA A129130; SC S057751)

248 P3d 953

Harrison Latto, Portland, argued the cause and filed the
briefs for petitioner on review.

Jeremy C. Rice, Assistant Attorney General, Salem,
argued the cause for respondent on review. Anna M. Joyce,
Deputy Solicitor General, John R. Kroger, Attorney General,
and Mary H. Williams, Solicitor General, filed the brief for
respondent on review.

Before De Muniz, Chief Justice, and Durham, Balmer,
Kistler, Walters, and Linder, Justices.**

---

** Gillette, J., retired December 31, 2010, and did not participate in the deci-
sion of this case. Landau, J., did not participate in the consideration or decision of
this case.

LINDER, J.

## LINDER, J.

In 1996, the state submitted to a grand jury two counts of sexual assault against defendant. The grand jury declined to indict, returning a "not true bill." In 2004, the state obtained court approval to resubmit the 1996 charges to a second grand jury. The state then presented those charges to a grand jury, along with two additional counts of sexual assault of a second victim. The second grand jury indicted defendant on all four counts. After a jury trial, defendant was convicted of all charges. Defendant appealed and, on appeal, the Court of Appeals affirmed without opinion. *State v. Stokes*, 229 Or App 97, 211 P3d 381 (2009). On review to this court, defendant challenges his convictions on two grounds. First, he argues that the trial court erred, under ORS 132.430(2),[1] in allowing the state to resubmit the 1996 charges to a second grand jury. Second, he argues that the period of over eight years between the crimes and defendant's indictment violated his right to due process under the Fourteenth Amendment to the United States Constitution.[2] We affirm the decision of the Court of Appeals and the judgment of the circuit court.

## I.   HISTORICAL AND PROCEDURAL FACTS

The relevant facts are not in dispute. In 1996, a grand jury declined to indict defendant for sodomy and sexual abuse of the first victim, an adult male friend of defendant. In the two months that followed, prosecutors interviewed two more men, one of them the brother of the first victim, who also claimed to have been sexually abused by defendant. In September 1996, defendant received a lengthy sentence in California on unrelated charges. The prosecutor in Oregon anticipated that, in light of that sentence, defendant would serve his life in the California prison without being paroled. He therefore halted the investigation of defendant to preserve public funds.

---

[1] ORS 132.430(2) is set out later in this opinion.

[2] The Fourteenth Amendment to the United States Constitution provides, in part, that "[n]o state shall * * * deprive any person of life, liberty, or property, without due process of law."

The prosecutor informed the police department that the case was closed. The police retained the evidence from the investigation for about three years. Then, in 1999 and 2000, the police department purged its evidence file on the case, destroying most of it. Specifically, the police destroyed a recording of the first victim's 9-1-1 call, the contents of a rape kit, the victim's clothing, and towels and clothing taken from defendant's house the day after the assault.[3] The only evidence remaining in the police file were photographs taken of the first victim the day after the assault, which were stored separately from the other evidence.

Eight years after the case was closed, in April 2004, a prosecutor in the district attorney's office learned that defendant's California conviction was reversed on appeal and that defendant intended to return to Oregon or Washington. The prosecutor—a different one than the prosecutor who had handled the case in 1996—reopened defendant's case and sought a court order to resubmit to a grand jury the charges relating to the first victim. The trial court granted the order, concluding that "evidence not available to the previous grand jury is now available, and that the ends of justice will be best served by the resubmission * * *." The state then resubmitted to the grand jury the initial charges and submitted for the first time charges of sodomy and sexual abuse of one of the additional victims (the brother of the first victim) who had come forward after the initial not true bill. The grand jury indicted defendant in May 2004, more than eight years after the crimes, but within the nine-year statute of limitations.[4] A subsequent jury trial resulted in defendant's convictions on all four counts.

---

[3] The detective who authorized the destruction of the evidence testified that he could not confirm that the police department had ever had the 9-1-1 tapes in its possession. For purposes of our review, we may presume that the tapes were included in the files that police later purged, because we nonetheless conclude that defendant failed to demonstrate a due process violation.

[4] Under ORS 131.125(2), the statute of limitations for sodomy and first and second-degree sexual abuse of an adult victim is six years. Under ORS 131.145(2)(a), the limitation period is tolled "[a]ny time when the accused is not an inhabitant of or usually resident within this state[.]" In this case, the statute was tolled while defendant was in custody in California. The maximum time that a statute of limitations may be tolled is three years. ORS 131.155. The practical result, in this case, was a nine-year statute of limitations.

Defendant appealed. He argued to the Court of Appeals, as he had to the trial court, that the resubmission of the initial charges violated ORS 132.430(2), which prohibits resubmission of dismissed charges to a grand jury without a court order. He also argued that the Due Process Clause prohibited the state from indicting him more than eight years after his crimes, notwithstanding the nine-year statute of limitations. The Court of Appeals affirmed the conviction without an opinion. Defendant petitioned for review, renewing the arguments that he had advanced on appeal. We allowed review to decide what standard governs a trial court's decision to allow the resubmission of charges under ORS 132.430(2) and to consider whether the preindictment delay in this case violated due process.[5]

## II. ANALYSIS

### A. *Resubmission Under ORS 132.430(2)*

We begin with defendant's argument that, under ORS 132.430(2), the trial court erred in allowing the state to resubmit the 1996 charges to a second grand jury in 2004. That statute provides:

> "When an indictment indorsed 'not a true bill' has been filed with the clerk of the court, the effect thereof is to dismiss the charge; and the same cannot be again submitted to or inquired of by the grand jury unless the court so orders."

ORS 132.430(2). Citing *State v. Turner*, 104 Or 334, 207 P 602 (1922), defendant urges that a circuit court may authorize resubmission of charges to a grand jury only when it is "in the interest of justice" to do so. *See id.* at 339-40 (describing the "evident design" of the statute). Here, defendant contends that resubmission was not in the interest of justice, because the state sought resubmission eight years after the case was closed, and was motivated to do so because

---

[5] Defendant also seeks review of the trial court's decision to admit evidence at trial of defendant's earlier, uncharged sexual assaults of two men not involved in the crimes charged here. The trial court allowed the evidence as relevant to whether the second victim consented to the sexual contact with defendant, as defendant argued at trial. We accepted review of this case to determine the propriety of defendant's indictment and we decline to review the evidentiary issue. *See* ORAP 9.20(2) ("If the Supreme Court allows a petition for review, the court may limit the questions on review.").

defendant had been released unexpectedly from California. Defendant asserts that the state was merely reassessing the cost-benefit analysis of whether to pursue the prosecution, which is not an adequate basis for resubmission. The state counters that the resubmission of the charges in this case was based on the existence of evidence that was not available at the time of the original grand jury proceeding—*i.e.*, the complaints of additional victims—and that the trial court's order authorizing resubmission was proper under the statute.

To determine the legislative intent behind ORS 132.430(2) and, in particular, whether resubmission under these circumstances comported with the statute, we begin with text and context. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (text and context are considered at first level of statutory analysis). The text of ORS 132.430(2) is straightforward. It requires dismissal of charges after a not true bill and bars resubmission of dismissed charges "unless the court so orders." The statute does not, however, identify what the trial court is to consider in issuing or declining to issue such an order. Given that silence, the statute's text, in and of itself, is of little help in resolving the particular issue before us. More helpful in that regard is the context of the statute, which includes " 'the preexisting common law and the statutory framework within which the law was enacted.' " *Ram Technical Services, Inc. v. Koresko*, 346 Or 215, 232, 208 P3d 950 (2009) (quoting *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004)). The context also includes case law interpreting the statute. *See State v. Sullens*, 314 Or 436, 443, 839 P2d 708 (1992).

The statute in its current form dates to 1864. *See* General Laws of Oregon, Crim Code, ch VII, § 65 (Deady 1845-1864).[6] It replaced the contrary common-law rule that

---

[6] Nonsubstantive changes were made to the statute in 1972. The 1864 statute provided: "[w]hen an indictment, indorsed 'not a true bill,' has been presented in court and filed, the effect thereof is to dismiss the charge; and the same cannot be again submitted to or enquired of by the grand jury, unless the court so order." General Laws of Oregon, Crim Code, ch VII, § 65 (Deady 1845-1864). In 1972, the legislature omitted the reference to presentment in the first clause and updated the spelling and grammar of the section. The meaning of the statute has not changed.

allowed a prosecutor to resubmit charges without limit or oversight. *See* Wayne R. LaFave *et al.*, 4 *Criminal Procedure* § 15.2(h), at 485-86 (3d ed 2007) (describing common-law rule).[7] At the least, the decision to adopt a rule differing from the common law implies a general intention to place *some* limitation on a prosecutor's ability to resubmit charges to subsequent grand juries. The question remains: what limitation?

Although the statute has been in place since statehood, only one case has come to this court requiring us to interpret it. That case, *Turner*, 104 Or 334, was decided in 1922. In *Turner*, a grand jury had, without a court order, investigated and indicted the defendant on a charge on which a different grand jury had earlier returned a not true bill. *Id.* at 335. The issue was whether the statute requires a court order when charges are reconsidered or resubmitted to *any* grand jury or, instead, whether the statute applies only when charges are reconsidered by the same grand jury that initially returned the not true bill. *Id.* at 335-36.

To resolve that issue, the court compared the statute to similar statutes from other states as well as to the contrary common-law rule, which either imposed no restriction on resubmission of dismissed charges, or restricted only the ability of the prosecutor to resubmit charges to the same grand jury that returned a not true bill; the authority of the grand jury itself was not impaired. *Id.* at 336-39. The court observed that the text of Oregon's statute (now codified as ORS 132.430(2)) was broader and divested the grand jury itself of authority to reconsider previously dismissed charges unless the grand jury did so by leave of the court. *Id.* at 339. The statute did not, however, specify whether it applied only to the same grand jury that had returned the not true bill, or to subsequent grand juries as well. The court commented that the "evident design" and "purpose" of the statute was to prevent the resubmission of charges "unless authorized by an order of the court made upon a showing that adequate reason

---

[7] As LaFave explains, during the early part of this century, nearly half of the states had adopted statutes requiring judicial approval for resubmissions to the grand jury, and thus altering the common-law rule in those jurisdictions. Many states have since repealed those laws, however, and such provisions are now found in only a minority of the states. *Id.*

exists, requiring that the charge be reconsidered in the interest of justice." *Id.* at 339-40. Guided by that understanding of the overall purpose of the statute, the court in *Turner* held that a court order is required when a later grand jury undertakes to reconsider charges dismissed by an earlier one, because an opposite conclusion would not accomplish the statute's purpose. *Id.* at 340.

As that description of *Turner* reveals, the issue before the court in *Turner* did not involve the propriety of a trial court order authorizing resubmission of charges to a grand jury. *Turner* held only that "the statute places [a charge's] revival or subsequent investigation in the exclusive control of the court, and the consent of the court is a condition precedent to the authority of the same or a subsequent grand jury to inquire of the charge." *Id. Turner* thus provides, at best, limited guidance on the question before us in this case.

Still, *Turner*'s observation of the overall purpose of the statute is consistent with other contextual sources that we may consider. Oregon originally adopted the statute as part of a criminal code that was based largely on New York law. *See* Frederic E. Brown, *The Sources of the Alaska and Oregon Codes*, 2 UCLA-Alaska L Rev 15, 31-33 (1972) (discussing in detail the sources of the criminal procedure provisions in the 1864 Oregon criminal code).[8] The commentary to the 1850 New York Code—the predecessor of the Oregon statute—explained that the statute was "designed to provide a convenient check upon the practice which now prevails, of repeated applications to the grand jury for an indictment, where it has been already dismissed." NY Code of Crim Proc, title V, ch I, § 286, commentary (1850). The commentary further noted that, under the common-law rule, the mere "perseverance of the prosecutor" sometimes led to an indictment after "frequent dismissals" and that the statute was intended

___

[8] *See also* NY Code of Crim Proc, title V, ch I, §§ 285-86 (1850) (requiring a court order for resubmission of charges after a not true bill). As Brown notes, the Deady Code was based on the work of an 1854 Oregon territorial commission, which adopted the entire 1850 New York Code, and on updates to that code by the Field Commission in New York. 2 UCLA-Alaska L Rev at 31; *see also* 1855 Statutes of Oregon, Advertisement (Asahel Bush 1855) (explaining that the statutes relating to "the manner of commencing and prosecuting actions at law, are taken, word for word, from the New York Code").

to "prevent, on the one hand, the abuse referred to, and to guard the interests of the public, on the other." *Id.*

Based on that commentary, we conclude that *Turner*'s "in the interest of justice" standard is apt, as long as it is understood to embrace the kinds of factors that are relevant to the decision to be made (resubmission of a charge to the grand jury), such as the public's interest in avoiding prosecutorial abuse and having persons who commit crimes brought to justice. We review that type of decision under the statute for abuse of discretion. *See, e.g., State v. Langley,* 314 Or 247, 257-58, 839 P2d 692 (1992) (review of trial court's denial of defendant's motion to substitute appointed counsel, based on factual findings and conclusion that defendant's complaint was not "legitimate," is for abuse of discretion); *State v. Little,* 249 Or 297, 311-12, 431 P2d 810 (1968) (review of trial court's denial of defendant's motion for a change of venue, based on whether defendant could receive a "fair and impartial trial," is for abuse of discretion).

Here, in support of the motion seeking an order allowing resubmission of the charges, the prosecutor provided an affidavit stating the basis for the motion. The affidavit explained that, after the first grand jury returned the not true bill, two additional victims came forward with complaints of sexual assault by defendant. The affidavit further explained the substance of the new complaints, which were both by two adult males who were acquainted with defendant before he turned aggressive and sexually threatening. Those two complaints described physical actions and emotional manipulations by defendant that were similar to the ones involved in the previously submitted charges.[9] The additional victims were not known to the prosecution when the first grand jury deliberated. Given those representations, the trial court in this case permissibly viewed those complaints as additional or new evidence for the grand jury's consideration.[10] The

[9] For example, the victims described defendant as attempting to force sexual contact and then relenting, repeatedly. All the victims described defendant making similar appeals to their friendships or to favors that he had done for them.

[10] The affidavit advised the court that the additional victims were not known to the prosecution at the time of the first grand jury proceeding, which puts them more clearly into a category of "new" evidence than if, for example, the state had known about the additional victims from the outset but had chosen not to present

averments in the prosecutor's affidavit thus provided an adequate basis to support the trial court's conclusion that resubmission of the previously considered charges to a subsequent grand jury was "in the interest of justice."[11]

Defendant nevertheless argues that resubmission was unjust under the particular facts of this case, principally because, in his view, "the real reason" the state sought resubmission was a "change in circumstances leading to a modified cost-benefit analysis." Defendant emphasizes the fact that prosecutors were aware of the additional victims within two months after the first grand jury returned the not true bill, but did not seek resubmission of the charges until eight years had passed and defendant was unexpectedly released from California custody. At that point, the state decided that defendant's risk to public safety was worth the cost of prosecution. Defendant contends that the prosecutor's assessment of the benefit of pursuing the charges, and not the presence of new evidence, prompted the motion seeking a court order authorizing resubmission. In defendant's view, a modified "cost-benefit analysis" is never an adequate reason for resubmission.

Defendant's framing of the issue confuses the basis for seeking resubmission (new evidence) with why the prosecutor subjectively thought, given that new evidence, that it was worthwhile to pursue the prosecution. Our inquiry is whether the trial court decision to order resubmission was a

---

that evidence to the initial grand jury or had been unable to present it for some reason. This case does not require us to consider if, in the latter circumstances, evidence regarding the additional victims would be considered new evidence. We note, however, that other jurisdictions that have considered that question have answered in the affirmative. *See State v. Ephamka*, 878 P2d 647, 651 (Alaska App 1994) (concluding that resubmission was properly allowed based on newly *available* testimony that was not newly discovered) (citing *People v. Ladsen*, 111 Misc 2d 374, 444 NYS2d 362 (NY Sup Ct 1981)).

[11] We do not mean to suggest that the existence of additional or new evidence is the only valid criterion for a trial court's exercise of discretion in deciding whether to allow or deny resubmission. That is the basis on which the prosecutor in this case sought resubmission, and the most common basis for resubmission in cases in other jurisdictions. *See generally* LaFave, 4 *Criminal Procedure* § 15.2(h), at 485-86 (describing newly discovered evidence as the most prevalent standard for resubmission, and as required by some state statutes). Our disposition of this case does not require us to consider what other considerations or criteria might also be considered by a trial court in ruling on a requested order for resubmission of charges to a grand jury.

permissible choice based on the information before it. *See, e.g., State v. Barone*, 329 Or 210, 219, 986 P2d 5 (1999) (reviewing trial court's denial of defendant's motion for change of venue, considering only the evidence "that was before the trial court at the time of the motion"). The statute contemplates an *ex parte* application to the trial court, and permits the court to make a decision based on the averred facts before it and, presumably, other facts of which the court might be aware or might choose to inquire. The prosecutor's subjective cost-benefit assessment of whether a prosecution would be worthwhile to pursue may have motivated the prosecutor to seek an order permitting resubmission to the grand jury, but that assessment was not the ground on which the prosecutor relied in seeking the new order. The ground for the prosecutor's motion was new evidence.[12]

Here, the new evidence on which the prosecutor relied in seeking resubmission permitted the trial court to determine that resubmission was in the interest of justice. We therefore conclude that the trial court did not abuse its discretion, and thus that the trial court did not err in ordering resubmission of the two previously dismissed charges to the grand jury.

B. *Due Process and Preindictment Delay*

We turn to the second issue: whether the Due Process Clause prohibited the state from indicting defendant more than eight years after the crimes were committed. Defendant argues that his right to due process was violated by the delay, notwithstanding the applicable nine-year statute of limitations. In particular, defendant contends that his ability to defend himself was prejudiced by the destruction of evidence

---

[12] In his proposed "rule of law" in his brief to this court, defendant also argues that resubmission was not in the interest of justice because of the eight-year delay in his prosecution, during which time police purged their files of evidence they previously had gathered. We need not decide in this case under what circumstances facts bearing on actual or likely prejudice from any delay in the resubmission of charges must be disclosed by a prosecutor in seeking an order of resubmission. Here, it suffices to observe that defendant did not make that argument to the trial court; the record does not establish that the prosecutor was aware, at the time of seeking resubmission, that the police had purged the evidence from their files; and, as we later conclude in connection with defendant's due process claim, the record does not, in all events, establish any actual prejudice as a result of the delay in this case.

and the deaths of three potential witnesses during the delay. Defendant concedes that the state did not delay his indictment in bad faith, but urges that the state acted in reckless disregard of the probable prejudice caused by a delay of over eight years, which defendant asserts violated due process. The state responds that the statute of limitations is the primary protection against prejudicial delay and that preindictment delay violates due process only when (1) the government intentionally delayed for tactical advantage and (2) that delay substantially prejudiced the defendant. According to the state, defendant can show neither of those elements.[13]

We recently addressed a similar due process claim in *State v. Davis*, 345 Or 551, 564, 201 P3d 185 (2008). In *Davis*, we explained that the Supreme Court has declined to announce a bright-line test for a successful due process claim of preindictment delay. *Id.* at 569-71. Two of that Court's decisions have addressed the issue: *United States v. Marion*, 404 US 307, 92 S Ct 455, 30 L Ed 2d 468 (1971) and *United States v. Lovasco*, 431 US 783, 97 S Ct 2044, 52 L Ed 2d 752

---

[13] Defendant argues in the alternative that we should *presume* prejudice from the length of delay in this case, rather than requiring him to show actual prejudice. The Supreme Court has held in this context, however, that prejudice will not be presumed for purposes of the Due Process Clause. *United States v. Lovasco*, 431 US 783, 789, 97 S Ct 2044, 52 L Ed 2d 752 (1977) ("[P]roof of actual prejudice makes a due process claim concrete and ripe for adjudication[.]"); *see also State v. Davis*, 345 Or 551, 575, 201 P3d 185 (2008) (due process claim requires "actual, not presumed, substantial prejudice"). Defendant also asks us to presume prejudice based on his Sixth Amendment speedy trial right, under which egregious delay caused by government negligence entitles a defendant to dismissal of criminal charges without a showing of actual prejudice. *See Doggett v. United States*, 505 US 647, 655-56, 112 S Ct 2686, 120 L Ed 2d 520 (1992) ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). The Sixth Amendment, however, protects a defendant only after indictment or arrest, as the Supreme Court has made clear. *Doggett*, 505 US at 655; *see also United States v. Marion*, 404 US 307, 321, 92 S Ct 455, 30 L Ed 2d 468 (1971) (same). The Court in *Marion*, a case concerning precharging delay, explained that there is "no need to press the Sixth Amendment into service to guard against the *mere possibility* that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." 404 US at 323 (emphasis added). The Court distinguished between the protections of the Sixth Amendment (from egregious delay between arrest or indictment and trial), *id.* at 321; statutes of limitation (from the *possibility* of prejudice resulting from precharging delay), *id.* at 322; and the Due Process Clause (from *actual* prejudice resulting from precharging delay), *id.* at 324. If defendant is entitled to a remedy in this case, in which he challenges a precharging delay within the statute of limitations, it must be under the Due Process Clause.

(1977). From *Marion* and *Lovasco*, two requirements of a successful due process claim are clear: (1) actual, nonspeculative prejudice; and (2) some level of government culpability. *Lovasco*, 431 US at 789-90. With regard to the second requirement—government culpability—it is also clear that so-called "investigative delay" never violates a defendant's due process rights. *Id.* at 796. Rather, the Court has explained that statutes of limitation generally "provide 'the primary guarantee against bringing overly stale criminal charges'" and "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Id.* at 789 (quoting *Marion*, 404 US at 322).

Neither *Marion* nor *Lovasco*, however, identify the level of government culpability a defendant must show in a successful due process claim of preindictment delay. *See Davis*, 345 Or at 570 (discussing the same). The Court in *Marion* accepted the government's concession that due process "would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial *and that the delay was an intentional device to gain tactical advantage over the accused*." 404 US at 324 (emphasis added). The Court then stated, "we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution." *Id.* Six years later, in *Lovasco*, the Court similarly stated that it "could not determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions." 431 US at 796. The Court concluded, "[w]e therefore leave to the lower courts, in the first instance, the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases." *Id.* at 797.

Since *Lovasco*, as we explained in *Davis*, the lower federal courts have divided into two camps on the question of "whether reasons for preindictment delay, other than an intentional delay to obtain a tactical advantage, may rise to the level of a due process violation." 345 Or at 570-71. A majority of the federal circuits have adopted a test that is reflected in the state's argument here, requiring a showing of intentional, tactical delay. *Id.* at 571; *see also U.S. v. Crouch*,

84 F3d 1497, 1511 (5th Cir 1996) (discussing majority test). The Ninth and the Fourth Circuits, by contrast, have established a different test. *Davis*, 345 Or at 571. Under that minority test, a court "consider[s] the government's reasons for the delay, balancing the prejudice to the defendant with the government's justification for the delay." *U.S. v. Uribe-Rios*, 558 F3d 347, 358 (4th Cir 2009) (internal quotation marks omitted) (citing *U.S. v. Automated Med. Labs., Inc.*, 770 F2d 399, 403 (4th Cir 1985)). Recklessness or even negligence on the government's part may satisfy the minority test, if actual prejudice to the defendant weighs substantially in the balancing. *United States v. Mays*, 549 F2d 670, 678 (9th Cir 1977) ("[A]lthough weighted less heavily than deliberate delays, negligent conduct can also be considered * * *.").[14]

As we will explain, we conclude that the minority test more closely follows the consistent threads in the Court's decisions—the disinclination to announce specific requirements for every case, the reliance on broad due process principles, and the insistence that the statute of limitations is a defendant's primary protection in this area, making due process violations unusual. The majority test, by contrast, forecloses the possibility that something other than intentional, tactical delay may violate due process. The Court in *Lovasco* explained that the appropriate inquiry is "only whether the action complained of * * * violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.'" 431 US at 790 (citations omitted). The Court has left open the possibility that a delay caused by something less than intentional government tactics may violate those fundamental conceptions of justice. We will do the same, until and unless the Court changes or narrows its course.[15]

---

[14] *See also United States v. Moran*, 759 F2d 777, 783 (9th Cir 1985) ("Although as established above, negligent governmental conduct may form a basis for unconstitutional pre-indictment delay, our cases clearly require some showing of governmental culpability to prove a deprivation of due process.").

[15] Several other states considering the issue of the proper due process standard for preindictment delay have also followed the minority test. *See, e.g., Knotts v. Facemire*, 223 W Va 594, 603, 678 SE2d 847 (2009) (adopting Fourth Circuit balancing test); *State v. Knickerbocker*, 152 NH 467, 470, 880 A2d 419 (2005) (adopting

The majority test relies heavily on the passage in *Marion* in which the Court accepted the government's concession regarding tactical delay. When taken in context, however, the relevant comments did not foreclose the minority test. The entire discussion reads:

> "[T]he statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause * * * would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution."

*Marion*, 404 US at 324 (citations omitted). In accepting the government's concession, the Court cited two of its previous due process cases, *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963) (due process violated when government suppresses evidence material to the defense), and *Napue v. Illinois*, 360 US 264, 269, 79 S Ct 1173, 3 L Ed 2d 1217 (1959) (due process violated when government knowingly allows false testimony to go uncorrected). *See also Moore v. Illinois*, 408 US 786, 794-98, 92 S Ct 2562, 33 L Ed 2d 706 (1972) (discussing both cases). In accepting the government's concession based on those cases, the Court seems to have been acknowledging that, when tactical delay is prejudicial, it is usually because of lost evidence, and *Brady* and *Napue* have established that due process would be violated by an intentional, tactical loss of evidence by the state. The Court did not expressly *require* tactical government delay for a due process violation, however.

---

balancing test); *State v. Rippy*, 626 A2d 334, 338 (Me 1993) (applying a balancing test, citing *Lovasco*); *State v. Chavez*, 111 Wash 2d 548, 558-60, 761 P2d 607 (1988) (adopting balancing test); *People v. Lawson*, 67 Ill 2d 449, 460-61, 367 NE2d 1244 (1977) (supplemental opinion on denial of rehearing) (interpreting *Lovasco* to require a balancing test between a defendant's actual prejudice and the state's reasons for the delay).

The minority test is consistent with the government's concession in *Marion* as well as with the Court's adherence to "elementary standards" of due process. *Lovasco*, 431 US at 795; *see also Marion*, 404 US at 325 (due process claim of preindictment delay "necessarily involve[s] a delicate judgment based on the circumstances of each case"). The flexibility in the minority test is faithful to the Court's due process jurisprudence in general, which in a variety of contexts favors multi-factor tests and balancing over bright-line rules. *E.g.*, *BMW of North America, Inc. v. Gore*, 517 US 559, 574-75, 116 S Ct 1589, 134 L Ed 2d 809 (1996) (describing three "guideposts" to analyze whether a punitive damages award violates due process); *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976) (announcing a three-part balancing test to determine whether a property or liberty deprivation violates due process). Consistently with the Court's overriding concern with "fair play and decency," *Lovasco*, 431 US at 795, the minority test allows for the possibility that prejudicial preindictment delay may violate the Due Process Clause, based on the circumstances of the case, where the government culpably caused that delay, although not for a tactical advantage.

We begin our analysis under the minority test with whether defendant has met his burden of showing actual, nonspeculative prejudice. Defendant argues that he was prejudiced by the destruction of evidence and the death of possible witnesses. He urges that some speculation is inevitable in any claim that lost evidence was prejudicial, but that here, where the state intentionally destroyed evidence that it could have retained, his burden to show actual prejudice should be relaxed, or shifted to the state.

We may readily resolve defendant's request to relax or shift the burden on the prejudice inquiry. As we earlier discussed, the Supreme Court has explained that statutes of limitation, and not due process, protect defendants against the *possible* prejudice caused by preindictment delay. *Marion*, 404 US at 322-24. That distinction reflects a reality observed by the Court in *Marion*: "Possible prejudice is inherent in any delay, however short; it may also weaken the

Government's case." *Id.* at 322. Indeed, the destroyed evidence in this case may have supported the state's case; both parties were forced to proceed without it.[16] Under *Marion*, the possibility for prejudice inherent in any delay is the province of the statute of limitations; due process is concerned only with actual prejudicial delay. *Id.* The burden to demonstrate actual prejudice is properly placed on defendant here, because he was prosecuted within the statute of limitations.

We note that defendant points to destroyed evidence and dead witnesses that relate only to the assault of the first victim; he claims no prejudice regarding the delay of indictment for the assault of the second victim. As to the charges involving the first victim, defendant asserts that his defense was prejudiced by the destruction of the rape kit, the victim's clothing, and the towels and clothing seized from defendant's house. Presumably, defendant would contend that the rape kit, clothing, and towels may have been inconsistent with the state's theory, although defendant does not offer a specific reason why the loss of that evidence was prejudicial. Indeed, without knowing the quality of that evidence, defendant can only speculate that it might have helped his defense. That speculation, however, is insufficient to demonstrate actual prejudice and cuts against defendant as sharply as it cuts in his favor. *See Davis*, 345 Or at 575 ("[T]he light they [the pieces of evidence] shed might have been favorable to defendant. Or they might have had no evidentiary value, or they might have bolstered the case against defendant. Either conclusion requires speculation."). The fact that the police in good faith purged physical evidence does not, on its own, demonstrate actual prejudice.

Defendant also points to the deaths of three potential witnesses and to the destruction of the 9-1-1 tape, but his argument in that regard is equally unavailing. Defendant emphasizes that the first victim's roommate, who picked up the first victim from a 7-Eleven store after the crime, and whom defendant's first attorney (retained in 1996) had on a

---

[16] Defendant does not allege, nor is there any evidence indicating, that the police purged their evidence in bad faith. If defendant were to have alleged bad faith, the burden to show bad faith would be his. *See Arizona v. Youngblood*, 488 US 51, 58, 109 S Ct 333, 102 L Ed 2d 281 (1988) (due process violation for failure to preserve evidence requires defendant to show bad faith on government's part).

list of people to interview, could have testified as to the first victim's demeanor shortly after the crime.[17] In particular, defendant contends that the roommate might have testified that the victim had a "calm, rather than agitated demeanor" shortly after the assault. Defendant makes the same argument for why the destruction of the 9-1-1 tape was prejudicial—it might have shown that the victim had a calm demeanor after the crime. Defendant can point to no evidence, however, supporting a conclusion that the roommate or the 9-1-1 tape was more likely to help rather than hurt defendant's case. He can only speculate as to the victim's demeanor. Again, due process is concerned solely with delay that is *actually* prejudicial. *See id.* at 575 ("The loss of the [9-1-1] recording does not establish actual prejudice, because the asserted value of its contents is, again, entirely speculative."); *see also United States v. Pallan*, 571 F2d 497, 501 (9th Cir), *cert den*, 436 US 911 (1978) (protection from lost testimony " 'generally falls solely within the ambit of the statute of limitations' ") (quoting 61 Minn L Rev 509, 517 (1977)).

Defendant has therefore failed to show substantial, actual prejudice. To be sure, some of the reason that defendant can only speculate as to the value of the missing evidence is that *so much* of the evidence is missing—no piece of clothing remains to indicate the value of the towels from defendant's house, no portion of the 9-1-1 tape remains to indicate whether the roommate's testimony would have supported the defense. Further, because the delay was prolonged, more evidence was destroyed or otherwise lost (*e.g.*, the victim's clothing was destroyed in March 1999, the rape kit was destroyed in May 2000, and the roommate died in 2002). Nevertheless, defendant has demonstrated only the slightest potential prejudice caused by the delay, which, "[e]ven if * * * sufficient to be placed on the scale for purposes of the minority balancing test, * * * at most would weigh very lightly. That, in turn, would mean that the reasons for delay must weigh heavily in defendant's favor and against the state." *Davis*, 345 Or at 576 (citing *Mays*, 549 F2d at 678).

---

[17] Defendant points to two other missing witnesses as well: his landlord's husband and defendant's neighbor. Defendant does not offer even a theory, however, for how those witnesses may have supported his defense.

Here, defendant asserts that the delay was caused by the state's incorrect assumption that defendant would serve a life sentence in California and its resulting conclusion that defendant did not pose a threat to public safety in Oregon. When defendant was released from custody eight years later, the state determined that defendant was a risk to public safety and ought to be prosecuted. Defendant's statement of the facts is undisputed, but his conclusion—that those reasons for delay are sufficiently reckless to violate due process in this case—does not follow.

This is not a case in which prosecutors ever intentionally delayed defendant's indictment, and defendant concedes that this is not a case of bad-faith delay. The state initially closed the case based on the good-faith belief that defendant would serve a life sentence. A different prosecutor made an independent decision eight years later to reopen the case. While the case was open, the state was investigating and moving the case forward; only one month passed between defendant's release in California and defendant's indictment in Oregon. That cannot be classified as investigative delay, which, under *Lovasco*, never violates due process. 431 US at 796. Neither, however, can the circumstances be classified as negligence by the state.

Defendant urges that the prosecutorial decisions here were reckless, because the state could have resubmitted the charges to a grand jury in 1996, obtained an indictment, and lodged a detainer against defendant while he was in custody in California. *See* ORS 135.775 (enacting the Agreement on Detainers). Instead, in defendant's view, the state chose to close the case and then reopen it eight years later. The "choice" that defendant perceives is one that arises only by hindsight, however. When the state closed the case in 1996, it did so without any expectation that it would proceed against defendant in the future. Therefore, from the state's perspective at that time, obtaining a detainer against defendant would have served no apparent purpose. In 2004, based on a change in circumstances, the state chose to proceed. Charging decisions require "consideration of a wide range of factors * * * in order to determine whether prosecution would be in the public interest." *Lovasco*, 431 US at 794. Due process does not prevent a prosecutor from making decisions based

on good faith judgments simply because the predicates for those decisions may change over time. *See, e.g., People v. Horning*, 34 Cal 4th 871, 893, 102 P3d 228 (Cal 2004) (describing as "practical" and "neutral" under a Sixth Amendment speedy trial analysis a district attorney's initial decision that "it was not worthwhile expending the necessary resources to extradite" the defendant, who was sentenced to life in prison in another state).[18]

Contrary to defendant's assertions, under these facts, the state was entitled to change its position regarding the danger that defendant posed to public safety over the course of eight years. The state did not close the case because it saw defendant as nonthreatening; it closed the case based on a conclusion that defendant's California sentence minimized his threat and, in light of that, pursuing defendant's prosecution in Oregon was not a good use of public resources. When the state's initial calculation turned out to be incorrect, the statute of limitations had not yet run. The sequence of events was not ideal—evidence had been destroyed and, eight years after the initial dismissal of the charges, the case had not yet been resolved. But in terms of the reason for those events, the state's actions do not demonstrate the government culpability and the degree of actual prejudice that violate due process.

## III. CONCLUSION

Under ORS 132.430(2), a trial court, in exercising discretion to allow or deny resubmission of charges to a grand jury, properly considers whether resubmission would be in the interest of justice, which is an inquiry guided by factors such as whether resubmission would be an abuse of the grand jury

---

[18] *See also, e.g., Graham v. Commonwealth*, 319 SW3d 331, 341-42 (Ky 2010) (no due process violation where state dismissed murder charges and closed case in 1981 and reindicted the defendant in 2007 based on newly available evidence) (citing *Lovasco*, 431 US at 795); *Evans v. State*, 808 So 2d 92 100-01 (Fla 2001) (no due process violation where the defendant could not demonstrate actual prejudice by state decision to close murder investigation in 1991 and reopen it in 1997); *State v. Potter*, 68 Wash App 134, 137-41, 842 P2d 481 (1992) (no due process violation, because defendant failed to show actual prejudice where state closed murder investigation based on coroner's report without knowledge of sheriff's investigation, and reopened case over 12 years later based on defendant's confession).

process or would serve the public interest in bringing a criminal to justice. Here, the facts set out in the prosecutor's affidavit in support of resubmission established that the state had additional evidence against defendant that had not been available when the first grand jury declined to indict defendant. Given that showing, the trial court did not abuse its discretion in ordering resubmission of the two charges previously considered by the grand jury.

To demonstrate that preindictment delay violated the federal Due Process Clause, a defendant must show that the delay actually prejudiced the defendant and that the government culpably caused the delay. A court must weigh the government's reason for the delay against the prejudice to determine whether the delay violated our society's fundamental conceptions of justice, fair play, and decency. Defendant in this case showed either no actual prejudice, or only the slightest actual prejudice, which was insufficient to prove a due process violation in light of the lack of government culpability.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.