**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RYAN LAWRENCE ANTHONY, | No. 23-35030 |
| Petitioner-Appellant, | D.C. No. 6:20-cv-00511-JE |
| v. | |
| GARRETT LANEY, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted December 4, 2023
Portland, Oregon

Before: BERZON, NGUYEN, and MILLER, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BERZON.

In 2007, following a jury trial in Oregon state court, Ryan Lawrence

Anthony was convicted of the 1980 robbery and murders of Ottilia and Casper

Volk. He was sentenced to multiple terms of life imprisonment. After

unsuccessfully pursuing a direct appeal and an application for post-conviction

relief in state court, Anthony filed a petition for a writ of habeas corpus. The

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

district court denied the petition, and Anthony now appeals. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

We review the district court's judgment de novo. *Panah v. Chappell*, 935 F.3d 657, 663 (9th Cir. 2019). Federal habeas review of a state-court conviction is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, when a claim has been "adjudicated on the merits in State court proceedings," a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

AEDPA prescribes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), requiring a petitioner to "show far more than that the state court's decision was 'merely wrong' or 'even clear error,'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam)). To obtain relief, a petitioner "must show that the state court's decision [was] so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting

*Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see Gibbs v. Covello*, 996 F.3d 596, 603 (9th Cir. 2021).

1. Anthony argues that his counsel on direct appeal was constitutionally ineffective because counsel did not appeal the state trial court's denial of his motion to dismiss the indictment based on a 27-year preindictment delay. The state post-conviction court rejected that claim. Under AEDPA, "the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *see Strickland v. Washington*, 466 U.S. 668, 689 (1984).

We are unable to say that there is no reasonable argument that counsel satisfied *Strickland*. At the time of Anthony's appeal, Oregon courts required a showing of intentional misconduct to establish a due process violation based on preindictment delay. *See State v. Williams*, 125 P.3d 93, 96 (Or. 2005). Although Oregon later adopted a more permissive standard, even that standard requires a defendant to "show that . . . the government culpably caused the delay." *State v. Stokes*, 350 Or. 44, 64 (2011). Anthony challenges the trial court's finding that the delay was not caused by negligence on the part of the state, but we disagree that the finding was objectively unreasonable. The state post-conviction court

reasonably concluded that "[a]ppellate counsel made a reasonable decision to not raise the issue on appeal" because it had a low likelihood of success.

2. At trial, the court prevented Anthony from presenting testimony from William Jackson that a third party, Gary Smith, had confessed to the murders. Anthony argues that the exclusion of Smith's out-of-court statements violated his due-process rights under *Chambers v. Mississippi*, 410 U.S. 284 (1973). In *Chambers*, a defendant charged with murder presented the testimony of a third party, McDonald, who had signed a confession in which he admitted to killing the victim. *Id.* at 287–88. When McDonald repudiated his confession, Chambers sought to present the testimony of three witnesses to whom McDonald had admitted the crime. *Id.* at 288–89. The trial court refused, relying on "a Mississippi common-law rule that a party may not impeach his own witness." *Id.* at 295. The Supreme Court held that the trial court violated the Due Process Clause because a "hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302. The Court explained that "[t]he hearsay statements . . . were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability" because, among other things, each one was "made spontaneously to a close acquaintance shortly after the murder had occurred" and was "corroborated by some other evidence in the case." *Id.* at 300.

Here, the state post-conviction court did not "mechanistically" apply a hearsay rule. *Chambers*, 410 U.S. at 302. Rather, it applied a rule under which statements against penal interest may be introduced if "corroborating circumstances clearly indicate the trustworthiness of the statement," *State v. Anthony*, 270 P.3d 360, 361 (Or. App. 2012) (quoting *State v. Cazares-Mendez*, 256 P.3d 104, 108 (Or. 2011)), and it determined, based on its examination of the record, that Smith was "singularly untrustworthy," *id.* In reaching that conclusion, the court emphasized that Smith's testimony was "disjointed and evasive," that "his supposed 'confession' to Jackson . . . was far from detailed," and that "nothing in the circumstantial evidence that defendant cites to bolster the theory that Smith was the perpetrator, and hence that Smith's 'confession' was trustworthy, prove[s] anything of the sort." *Id.* at 361–62.

Without necessarily endorsing all of the state court's reasoning, we have no difficulty concluding that the court did not unreasonably apply *Chambers*. Although repeated, Smith's supposed confession was indeed "far from detailed." *Anthony*, 270 P.3d at 362. On one occasion, he said simply that he "did a job in Lake Oswego," and on another, that "[m]e and Atherton did that one" while riding motorcycles. Anthony emphasizes that some witnesses saw motorcycles parked near the victims' house and that others saw two men near (although not at) the house on the night of the murders. That is a far cry from the level of corroboration

5

that was present in *Chambers*, which included testimony "that McDonald was seen with a gun immediately after the shooting"; evidence "of [McDonald's] prior ownership of a .22-caliber revolver," the weapon used in the shooting; and, most critically, "the testimony of an eyewitness to the shooting" who identified McDonald as the shooter. 410 U.S. at 300. Whether or not we would reach the same result on de novo review, we cannot say that the state court's application of *Chambers* was "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn*, 592 U.S. at 118 (quoting *Harrington*, 562 U.S. at 103).

**AFFIRMED.**

*Anthony v. Laney*, No. 23-35030

BERZON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision on the question of preindictment delay. I write separately because, unlike the majority, I would hold that excluding evidence of Gary Smith's confessions violated Ryan Lawrence Anthony's constitutional right to present a defense. I therefore dissent.

Our constitution guarantees criminal defendants "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Gable v. Williams*, 49 F.4th 1315, 1329 (9th Cir. 2022). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302. *Chambers* held that excluding evidence of a third party's confessions and precluding the defendant from cross-examining the third party can deprive the defendant of a fair trial. *Id.* at 300–02. The Supreme Court explained in *Chambers* that the hearsay confessions the defendant was precluded from introducing "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability" because (1) the confessions were made "spontaneously to a close acquaintance shortly after the murder"; (2) the confessions were "corroborated by some other evidence in the case"; and (3) "each confession [] was in a very real sense self-incriminatory and unquestionably

1

against interest." *Id.* at 300–01. Thus, where the state court rejects defense evidence that has "persuasive assurances of trustworthiness" and is "critical" to the defense, excluding the evidence on hearsay grounds unconstitutionally deprives the defendant of a fair trial. *Id.* at 302.

Anthony was precluded from introducing the testimony of William Jackson, a former close criminal associate of Smith's, who told police that Smith confessed to the murders on two occasions. In my view, the state court's reasons for rejecting Anthony's *Chambers* claim were inconsistent with or unreasonably misapplied *Chambers* and also reflected an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d) ("AEDPA"). Evidence of Smith's confessions was undoubtedly critical to Anthony's defense, and the confessions were sufficiently corroborated. I therefore conclude that Anthony's constitutional right to present a complete defense was violated.

1. In affirming the exclusion of the evidence, the Oregon Court of Appeals unreasonably relied on the fact that at the time of the 2007 pre-trial hearing, Smith "was a self-confessed serial killer, serving five consecutive life sentences," as a reason to exclude testimony about Smith's confessions. *State v. Anthony*, 247 Or. App. 582, 585–86 (2012). When Smith first confessed to Jackson in 1980, he was not in custody nor was he a convicted killer.

Further, the fact that Smith was a "self-confessed serial killer" made his

2

earlier confessions *more* credible, not less. Smith was a serial killer active in the same geographic area during the relevant time; he committed multiple random home invasion burglary-murders that summer in the Portland and southern Washington areas, some of which involved elderly victims. In some instances, Smith stabbed his victims to death. That Smith was committing similar crimes in the same area during the same time period as the murders with which Anthony was charged significantly tended to corroborate Smith's confession. The state court's elision of this central factor in evaluating whether Smith's confession was sufficiently reliable was an unreasonable application of *Chambers*, as well as an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

Moreover, a third party suspect who has confessed to murder will always, by definition, be a "confessed [] killer." *Anthony*, 247 Or. App. at 585. If the fact that someone is a confessed killer makes their statements "singularly untrustworthy," then no *Chambers* claim could ever succeed. For example, the hearsay murder confessions at issue in *Chambers*, *Gable*, and *Cudjo v. Ayers*, 698 F.3d 752 (9th Cir. 2012), were all made by confessed murderers, yet their confessions were deemed reliable enough that they should have been presented to a jury. *See* *Chambers*, 410 U.S. at 288–89, 302–03; *Gable*, 49 F.4th at 1327, 1330; *Cudjo*, 698 F.3d at 756, 766-68.

2. In addition to failing to recognize the significantly corroborative value of

3

the fact that Smith was a serial killer who was committing similar crimes during the relevant time period, the Oregon Court of Appeals did not recognize that his confessions were corroborated in several other key respects. For example, the state court did not acknowledge that Smith confessed on more than one occasion. The state court decision refers only to one "confession," in the singular, *Anthony*, 247 Or. App. at 585–86, but Smith confessed at least twice: once days after the murder, and a second time nine months later. Although multiple confessions are not required for a *Chambers* claim to succeed, *see, e.g.*, *Cudjo*, 698 F.3d at 756, the "number of independent confessions . . . provide[s] additional corroboration for each," *Chambers*, 410 U.S. at 300.

In addition, the state court did not take into account that Smith's first confession – that he committed the murders with a man named Keith Atherton – was made in Atherton's presence. Rather than deny Smith's statement at the time it was made, Atherton responded by "ask[ing] him to be quiet." Atherton's failure to deny Smith's statement tended to corroborate the confession.

The state court also did not consider that when Smith first confessed, days after the murder, he had money on him, which was what prompted Jackson to ask him where he got the money from. The evidence that the victims' wallets were both empty tends to corroborate Smith's confession.

Further, Smith's second confession indicated that he was riding his

4

motorcycle at the time he and Atherton came upon the victims' house and committed the murders. This detail is consistent with evidence that on the day of the murders as well as the day afterward, witnesses saw two motorcycles parked across the street from the victims' residence. One of the motorcycles had a similar color, engine size, and front panel to Smith's motorcycle.[1] Although the state court noted that two motorcycles were seen near the victims' residence, the court failed to acknowledge that this evidence provided corroboration of Smith's second confession, or that the witness reports indicated that one of the motorcycles shared similar characteristics to Smith's. *See Anthony*, 247 Or. App. at 585–86.[2]

Smith's admission that he and Atherton committed the murders was also consistent with eyewitness testimony that on the night of the murders, around 10:20 pm, *two* men, conspicuously dressed in black hooded coats on a warm summer night, were in the Safeway parking lot directly across from the victims' residence, walking toward their house. Although the state court acknowledged this testimony, the court did not acknowledge that the sighting of two men headed toward the victims' house matched Smith's account that he committed the murder with Atherton.

3. The state court also erred in rejecting Jackson's testimony about Smith's

---

[1] Smith used his motorcycle as transportation in at least one other home invasion burglary-murder the same summer.

[2] Anthony did not own a motorcycle at the time.

confessions based on Smith's lack of credibility as a witness at the 2007 pretrial hearing. *See Anthony*, 247 Or. App. at 585–86. Smith's quality as a witness in 2007 was not pertinent. It was Jackson whose testimony Anthony sought to admit, and Jackson's testimony concerned statements Smith had made more than two decades earlier. Further, Smith's availability as a witness weighed in favor of admitting Jackson's testimony. If Smith were called to the stand, the jury could evaluate for itself whether it believed Smith's later disavowal of his confessions; if Smith's testimony was "disjointed and evasive," *Anthony*, 247 Or. App. at 585, that could, if anything, undermine the credibility of his recantation.

The state court's reliance on Smith's lack of credibility as a live witness was contrary to *Chambers*, which makes clear that it is the *jury*'s role to evaluate the credibility of witnesses. 410 U.S. at 301. *Chambers* explained that the hearsay rule excludes out-of-court statements because "they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." 410 U.S. at 298. But where, as here and as in *Chambers*, the individual who allegedly confessed *is* available as a witness, the individual may be examined under oath and "his demeanor and responses weighed by the jury." *Id.* at 301. *See also Cudjo*, 698 F.3d at 763 ("Supreme Court precedent makes clear that questions

6

of credibility are for the jury to decide."); *id*. at 768 n.6 ("the Supreme Court requires credibility questions be left to the jury").

\* \* \*

I do not address prejudice in detail because the majority does not reach the issue. In my view, the question is quite close, given the strength of the prosecution's case. But AEDPA deference is inapplicable to the prejudice question because the state court did not conduct a harmless error analysis. *See Cudjo*, 698 F.3d at 768. Evidence that a serial killer who was later convicted of other, similar murders in the same vicinity in the same time frame twice confessed to the murders at issue here may well have raised a reasonable doubt as to Anthony's innocence. On balance, I am inclined to harbor a "grave doubt" as to whether the exclusion of the evidence was likely to have substantially influenced the jury's verdict. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993).