Argued and submitted January 13; decision of Court of Appeals affirmed, judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings July 14, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOHN VIRGIL BENSON,
*Petitioner on Review.*

(CC 17CR32143) (CA A168977) (SC S068495)

514 P3d 491

After being charged with several crimes related to defendant's sexual assault of the victim, B, defendant moved to dismiss the case, arguing that his due process rights were violated as a result of the 91-month preindictment delay. Defendant argued that the preindictment delay contributed to the loss of an initial report of the victim's disclosure of the assault to a counselor at a treatment center and the loss of memory of some witnesses. The trial court denied defendant's motion after determining that defendant did not establish substantial prejudice as a result of the delay. Defendant was convicted, and the Court of Appeals affirmed the trial court's denial of the motion to dismiss. *Held*: Defendant failed to prove actual, substantial prejudice as a result of the preindictment delay and, thus, there was no violation of his due process rights.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Kali Montague, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

_____

* On appeal from the Linn County Circuit Court, Daniel R. Murphy, Judge. 309 Or App 422, 483 P3d 689 (2021).

** DeHoog, J., did not participate in the consideration or decision of this case.

NELSON, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**NELSON, J.**

After receiving a report that defendant had sexually assaulted B, the police launched an investigation that was subsequently halted. Seven and a half years later, after the case was rediscovered during an "open case" search, a grand jury indicted defendant for first-degree rape (ORS 163.375), second-degree sexual abuse (ORS 163.425), and attempted first-degree sexual abuse (ORS 161.405, ORS 163.427). Prior to a bench trial, defendant moved to dismiss on grounds of preindictment delay. The trial court denied that motion, and defendant was found guilty on all charges.

On review, defendant argues that his due process rights were violated as a result of the preindictment delay. He contends that he was prejudiced due to the delay because the documentation of the victim's initial disclosure had been destroyed and the victim and the detective who initially investigated the case had lost memories of important aspects of the early investigation that may have been used to assist in defendant's defense. Defendant maintains that the trial court erred in denying his motion to dismiss. For the reasons set forth below, we reject defendant's claim of error and, accordingly, affirm his convictions.

## I.   FACTS

The background facts are undisputed and are taken from the record and the Court of Appeals opinion. In April 2009, B disclosed to a counselor at Rimrock Trails Adolescent Treatment Center (Rimrock), located in Prineville, Oregon, that defendant had sexually assaulted her 11 months earlier at a park in Lebanon, Oregon. At the time of the sexual assault, B was 16 years old, and defendant was 21 years old.

Following B's disclosure, the Prineville Police Department was notified of the sexual assault. An officer from the Prineville Police Department conducted an interview with B on April 9. Shortly thereafter, on April 15, the case was transferred to Officer Weber of the Lebanon Police Department and was assigned to Detective Martinez for investigation. Weber provided Martinez with a short summary of the case that generally referenced "a report from [the Prineville

Police Department] of a possible rape" and stated that he had "reviewed the details." In addition, Weber attached a detailed report from the Prineville Police Department that included the interview of B and the names of potential witnesses. Weber's summary did not include the name of the counselor who made the initial call, or any report of that call itself, and the Prineville Police Department report is not part of the record.[1] The Lebanon Police Department generated a report from the materials that included a crime code designation of "Rape III—Under 16 * * * Stat[utory] Rape—No Force." It is not clear whether Weber or Martinez made that designation.

After the case was transferred to the Lebanon Police Department, Martinez interviewed B and conducted a follow up interview with a witness shortly thereafter. He also attempted to locate defendant but was unable to do so. The investigation apparently ceased within about a month of the initial report. Martinez was unable to recall exactly why the investigation ceased, but he did explain that around the same time that he received the case assignment, he was reassigned to patrol sergeant and "it was * * * a situation that because of transitions and things like that, it appears that somehow it was overlooked in the process and by incoming investigators."

In November 2016, the Lebanon Police Department records department, which periodically searches old cases, discovered this case in an "open-case search." The case was reassigned to Detective Padua, who reviewed the original reports from both police departments and reopened the investigation. As a result of the ensuing investigation, defendant was indicted on charges of first-degree rape, second-degree sexual abuse, and attempted first-degree sexual abuse in May 2017.

Before trial, defendant moved to dismiss the indictment, contending that the delay of seven years and seven months (totaling 91 months) violated his due process rights under the Fifth and Fourteenth Amendments to the United

---

[1] The record indicates that defendant did have a copy of the Prineville Police Department report, but the report itself was not admitted into evidence.

States Constitution.[2] Specifically, defendant asserted that the Rimrock counselor to whom B reported the sexual assault had prepared a report documenting B's initial disclosure and that that document had been destroyed during the 91-month delay. Defendant's own investigator, Blehm, testified that he had visited Rimrock to "find out what their intake policies were" and "what they did when they [take] somebody in." Based on that visit to Rimrock, Blehm understood that a report would have been generated when B disclosed the sexual assault to her counselor, but he was unable to procure the report. At that point in the hearing, the trial court took judicial notice of OAR 415-054-0430(9), which provides that drug and alcohol treatment records "shall be kept for a minimum of seven years." Blehm also testified that he was unable to determine which Rimrock counselor conducted B's intake. When he visited Rimrock and spoke with its staff, Blehm did not have a release from B that would permit staff to discuss her case with him. Martinez also testified at the hearing but could not recall the details of his investigation after the case was transferred to the Lebanon Police Department.

          To support the claim that his due process rights were violated by the preindictment delay, defendant first contended that the state was culpable for the delay because it failed to produce any justification or explanation for its cause. In addition, defendant argued that he was prejudiced by that delay because he was not allowed an opportunity to "examine and compare" the statements that B had made to the Rimrock counselor at the time of her initial disclosure with any of the later statements that B made to detectives, explaining that B's initial statements could have been "substantially different in character, considering the priorities and purpose of revealing such personal information."

          In response, the state conceded that the 91-month delay may have been caused by its own negligence or recklessness, though the delay was not intentional. As to prejudice,

---

[2] The Due Process Clause of the Fifth Amendment to the United States Constitution provides, "No person shall *** be deprived of life, liberty, or property without due process of law[.]" Similarly, the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, "No state shall *** deprive any person of life, liberty, or property, without due process of law[.]"

however, the state argued that defendant had failed to establish actual, substantial prejudice, the required standard for a due process violation based on preindictment delays, because defendant's assertions about the contents of the Rimrock report were speculative and there was no evidence that the report would have contained the type of information that defendant claimed would have helped his case.

The trial court concluded that the state was "clearly culpable in the delay" due to negligence by the Lebanon Police Department, but agreed with the state that defendant's claim of prejudice was speculative: "All of the witnesses are available, or at least there's no evidence they're not available. And there's no specific evidence that a witness * * * would have remembered something back at the time of the initial investigation and then failed to remember it." The court explained that it would have "to speculate about to what extent or to what degree memory had been attenuated as a result of the delay."

Defendant waived his right to a jury trial. The court heard testimony that defendant forcibly raped B and attempted to forcibly place his penis in her mouth. For that conduct, defendant was convicted of first-degree rape, second-degree sexual abuse, and attempted first-degree sexual abuse. At sentencing, the trial court imposed a true-life sentence pursuant to ORS 137.719,[3] based on two prior convictions for sexual assault that defendant committed in 2011 and 2016, after the incident in this case.

Defendant appealed, challenging the trial court's denial of his motion to dismiss as error.[4] Defendant renewed his argument that the 91-month delay violated his due process rights and contended that the trial court erred in

_____

[3] ORS 137.719 provides that "[t]he presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence."

[4] Defendant raised six assignments of error on appeal. The Court of Appeals rejected four without discussion. *State v. Benson*, 309 Or App 422, 424, 483 P3d 689 (2021). The other assignment of error—that the trial court erred in failing to merge the guilty verdicts on Counts 1 and 2—was conceded by the state as plain error and, on those counts, the Court of Appeals reversed and remanded for resentencing. *Benson*, 309 Or App at 440. That issue is not before us on review.

concluding that he did not demonstrate actual, substantial prejudice as a result of the delay. Specifically, defendant argued that B's credibility was crucial to the state's case, given that the case lacked physical evidence, and the missing Rimrock report could have been used to cross-examine B "on any inconsistencies she might have from the initial disclosure that preceded her testimony by nearly a decade." On balance, defendant argued that the actual prejudice caused by the delay outweighed the justification for the delay and, therefore, the trial court erred in denying his motion to dismiss for due process violations. In response, the state argued that defendant had failed to carry his burden of proving actual, substantial prejudice from the delay because "it is unknown whether the counselor actually mentioned the disclosure in the report and, if so, what the counselor reported." Given the state's low level of culpability and the minimal, speculative nature of prejudice to defendant caused by the delay, the state argued that, on balance, there was no violation of defendant's due process rights.

In a reply brief before the Court of Appeals, defendant raised one additional reason why, in his view, the Rimrock report may have contained valuable impeachment evidence and its unavailability prejudiced defendant's ability to present an adequate defense. Defendant explained that the report prepared by the Lebanon Police Department initially classified the crime as third-degree rape with "no force." Because defendant was indicted more than 90 months after the incident was first reported and was charged with first-degree rape by forcible compulsion, "[h]aving the report of the initial disclosure would have provided defendant with, at a minimum, the counselor's identity to question her about that discrepancy, which defendant could have use to impeach" B.

The Court of Appeals began by examining cases concerning when a preindictment delay violates a defendant's Fifth and Fourteenth Amendment due process rights, before turning to defendant's asserted grounds of prejudice in this case. *State v. Benson*, 309 Or App 422, 430-35, 483 P3d 689 (2021). The Court of Appeals first explained that the record supported—and neither party contested—the

trial court's finding that the state was culpable and negligent for the preindictment delay. *Benson*, 309 Or App at 435. The court then turned to the alleged prejudice from the loss of the Rimrock report and concluded that defendant had not met his burden of demonstrating actual, substantial prejudice because defendant's arguments were "based on presumptions about the contents and quality of the report," not any evidence in the record that would support an inference that the lost report would have assisted in his case. *Id.* at 438-39. Accordingly, the Court of Appeals held that, "despite the state's negligence in causing the delay, the trial court did not err in denying defendant's motion to dismiss." *Id.* at 439.

Defendant petitioned this court for review, advancing the same arguments that he had made before the Court of Appeals. We allowed review, limited to the following issue:

> "Does a defendant establish 'actual prejudice' caused by a 91-month pre-indictment delay when he shows that the first official report of the complainant's disclosure is unavailable to him for impeachment purposes at trial and when the police report created at the same time contemplated a lesser degree of the charged crime?"

We specifically requested that the parties focus their arguments on the prejudice, if any, resulting from the loss of the initial report made at Rimrock and the witnesses' inability to recall information.

## II.   ANALYSIS

We review a trial court's denial of a motion to dismiss based on a preindictment delay for errors of law. *State v. Davis*, 345 Or 551, 564-65, 201 P3d 185 (2008). We are bound by the trial court's express and implicit factual findings so long as those factual findings are supported by evidence in the record. *Id.* at 565.

The United States Supreme Court has recognized that a preindictment delay may implicate a defendant's Fifth and Fourteenth Amendment due process rights. *See United States v. Lovasco*, 431 US 783, 789, 97 S Ct 2044, 52 L Ed 2d 752 (1977) ("[T]he Due Process Clause has a limited role to play in protecting against oppressive delay."). That said,

the "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal charges." *Id.* at 789 (internal citations and quotation marks omitted). Due process violations caused by a preindictment delay are unusual, but may be established where a defendant shows actual prejudice and government culpability in the delay:

> "An indictment is rarely dismissed because delay by the prosecution rises to the level of a Fifth Amendment due process violation. The well-settled test for determining whether a defendant's due process rights have been violated is in two parts. First, a defendant must prove that he suffered actual, non-speculative prejudice from the delay, meaning proof that demonstrates exactly how the loss of evidence or witnesses was prejudicial. The defendant's burden to show actual prejudice is heavy and is rarely met. The second part of the test applies only if the defendant has demonstrated actual prejudice. In the second part, the delay is weighed against the reasons for it, and the defendant must show that the delay offends those fundamental conceptions of justice which lie at the base of our civil and political institutions."

*United States v. Barken*, 412 F3d 1131, 1134 (9th Cir 2005) (internal citations and quotation marks omitted).

A.    *Scope of Review of the Record*

We begin with a preliminary dispute between the parties. Defendant and the state disagree about the proper scope of this court's review of the record based on the timing of defendant's motion. The state contends that review should be limited to the record before the trial court at the time of the motion. Because defendant made his motion before trial and did not renew that motion at the close of the trial, the state contends that appellate review must be limited to the pretrial record. Defendant, on the other hand, argues that this court should consider the entire record on review, including the evidence at trial, to determine whether a defendant was prejudiced by preindictment delay.

The United States Supreme Court has indicated that a reviewing court may consider the record that develops

at trial in deciding whether the trial court should have dismissed an indictment for preindictment delay. *United States v. Marion*, 404 US 307, 326, 92 S Ct 455, 30 L Ed 2d 468 (1971). In *Marion*, the district court granted the defendants' pretrial motion to dismiss due to preindictment delay. *Id.* at 310. But, after considering the defendants' arguments that the delay generally may have caused memories to dim, witnesses to become inaccessible, and evidence to be lost, the United States Supreme Court disagreed with the trial court and concluded that the defendants had not yet demonstrated the requisite prejudice to support the claims of due process violations:

> "In light of the applicable statute of limitations, \*\*\* these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."

*Id.* at 326.

  *Marion* recognizes that actual, substantial prejudice to a defense is required to sustain a motion to dismiss based on preindictment delay and that the events that occur at trial may be a necessary part of the substantial prejudice analysis. As a general matter, the trial court will be in the best position to evaluate the existence of prejudice *after* the full trial has taken place. That is so because there is no due process violation based on the preindictment delay unless the defendant establishes prejudice that implicates his right to a fair trial, and it may be difficult to make that determination in most cases until after the trial occurs. As a result, dismissal on that basis *prior to trial* will rarely be appropriate. *See U.S. v. Crouch*, 84 F3d 1497, 1523 (5th Cir 1996) (concluding as much).

  As those cases indicate, the answer to the question in this case is that we review the trial court record in its entirety. In doing so, we recognize that we have the benefit of more information than the trial court did when it made its initial determination. Had the trial court deferred its ruling, that would have allowed that court to consider the

issue of prejudice on a complete record. And, had defendant renewed his motion at the conclusion of trial, that motion would have alerted the trial court to reconsider. Those are practices that the bench and bar may wish to consider in the future. In particular, should a defendant seek dismissal on a basis not articulated at the outset of a case, the defendant may need to renew the motion to preserve the issue. Here, however, preservation is not a bar to our consideration of the record as a whole.

B.   *Due Process Violation Based on Preindictment Delay*

We turn to the basis of defendant's due process claim. As explained above, the Supreme Court has explained that dismissal of a case based on preindictment delay is appropriate only where the defendant establishes actual, substantial prejudice that outweighs the government's reasons for the delay. *See Lovasco*, 431 US at 789 ("[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim, *** the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."). One question that the Supreme Court has previously declined to answer is how the lower courts should weigh the constitutional significance of the reasons for delay. The Court has avoided setting out the level of government culpability required to establish a due process violation by preindictment delay, leaving "to the lower courts, in the first instance, the task of applying the settled principles of due process that [it has] discussed to the particular circumstances of individual cases." *Id.* at 797. This court utilizes a balancing test that requires the lower courts to "consider the government's reasons for the delay, balancing the prejudice to the defendant with the government's justification for the delay." *State v. Stokes*, 350 Or 44, 57, 248 P3d 953 (2011) (internal citations and quotation marks omitted). Under that test, "[r]ecklessness or even negligence on the government's part may satisfy the *** test, if actual prejudice to the defendant weighs substantially in the balancing." *Id.* at 57 (quoting *United States v. Mays*, 549 F2d 670, 678 (9th Cir 1977)). Thus, to succeed on a claim of a due process violation caused by a preindictment delay, a defendant must "show that the delay actually prejudiced the defendant

and that the government culpably caused the delay. A court must weigh the government's reason for the delay against the prejudice to determine whether the delay violated our society's fundamental conceptions of justice, fair play, and decency." *Id.* at 64.

With that legal background in mind, we turn to the first prong of the balancing approach, considering whether defendant met his burden of showing substantial and actual—that is, nonspeculative—prejudice. That may be established by proving "'exactly how the loss of evidence or witnesses was prejudicial.'" *Davis*, 345 Or at 573 (quoting *Barken*, 412 F3d at 1134). To guide our decision as to whether defendant met that burden in this case, we turn to two prior cases where this court has considered whether a defendant's due process rights were violated by a preindictment delay.

This court first considered the effect of a preindictment delay on a defendant's constitutional due process rights in *Davis*, a case involving a double murder that occurred in 1991. 345 Or at 554. After discovering the two victims inside a hotel room, police began an investigation that initially implicated the defendant in that case. The defendant provided the state with an alibi that was corroborated by several witnesses and that placed him somewhere else at the time of the murders. *Id.* at 556-57. It was not until more than ten years later, in 2002, that a witness came forward with information that the defendant had admitted to the murders. *Id.* at 559-60. From that lead, the investigation turned up new witnesses who provided information inculpating the defendant, and, after nearly 11 years, the defendant was charged in the case with multiple counts of aggravated murder. *Id.* at 564.

Before trial, the defendant moved to dismiss the case based on the preindictment delay, arguing that the state "may have acted to gain tactical advantage" through the delay and that the delay resulted in actual prejudice to his ability to mount an effective defense because evidence had gone missing during the delay. *Id.* at 565. The trial court rejected those arguments, finding that the state was not culpable in the 11-year delay and that the defendant had

not met his burden to prove actual, substantial prejudice. *Id.* at 567.

On review, we affirmed the trial court's denial of the motion, finding that the defendant's claims of prejudice based on the unavailability of evidence were too speculative:

> "Those potential witnesses and possible items of evidence might have shed light on the case, and the light they shed might have been favorable to [the] defendant. Or they might have had no evidentiary value, or they might have bolstered the case against defendant. Either conclusion requires speculation. \*\*\* Simply identifying items and information of undetermined evidentiary value that the police theoretically could have obtained does not satisfy [the] defendant's burden to demonstrate actual prejudice."

*Id.* at 575. Even assuming that some prejudice existed, we explained, it would weigh very lightly in application of the balancing test, but the state's reason for the delay in that case—"the need to sufficiently investigate the crimes and obtain probable cause to bring charges"—would not tip the scale in the defendant's favor at all. *Id.* at 576.

This court addressed the standards for establishing a due process violation caused by a preindictment delay again in *Stokes*. In that case, the defendant was under investigation for various sex crimes in Oregon, but the state closed the investigation when the prosecutor learned that the defendant would be serving a lengthy sentence in California on unrelated charges. *Stokes*, 350 Or at 46. The police retained evidence from the investigation for roughly three years but then destroyed the case file. *Id.* at 47. That case file included a recording of a victim's 9-1-1 call, the contents of a rape kit, a victim's clothing, and towels and clothing taken from the defendant's house. *Id.*

Subsequently, approximately eight years after the Oregon investigation was closed, a prosecutor in the district attorney's office learned that the defendant's California conviction was reversed on appeal and that the defendant possibly intended to return to live in Oregon. *Id.* The case against the defendant was reopened and, eventually, he was convicted of sexual assault charges. *Id.*

Before his trial, the defendant filed a motion to dismiss, arguing that the eight-year preindictment delay violated his due process rights, notwithstanding the nine-year statute of limitations on the charges that he faced. *Id.* at 48. Specifically, the defendant contended that his ability to defend himself was prejudiced by the destruction of evidence in the police case file and the deaths of three potential witnesses that had occurred during the delay. *Id.* at 54-55. The trial court denied the defendant's motion, and the Court of Appeals affirmed. *Id.* at 48.

On review, this court affirmed that decision. *Id.* at 64. We examined the defendant's claim of prejudice as it related to how he claimed each piece of evidence would have assisted in his defense. As to the rape kit, the victim's clothing, and the towels and clothing taken from the defendant's home, we noted that

> "[p]resumably, defendant would contend that the rape kit, clothing, and towels may have been inconsistent with the state's theory, although defendant does not offer a specific reason why the loss of that evidence was prejudicial. Indeed, without knowing the quality of that evidence, defendant can only speculate that it might have helped his defense. That speculation, however, is insufficient to demonstrate actual prejudice and cuts against defendant as sharply as it cuts in his favor."

*Id.* at 60. We cited *Davis* to support that holding.

We then considered the defendant's claim that he faced additional prejudice due to the deaths of three witnesses and the destruction of the 9-1-1 tapes. The defendant's primary contention was that that evidence may have shown that the victim had a calm demeanor following the alleged assault, "rather than an agitated demeanor." *Id.* at 61. Again, we concluded that the defendant's claim was speculative, noting that the defendant did not point to any evidence "supporting a conclusion that [the witness's testimony] or the 9-1-1 tape was more likely to help rather than hurt [the] defendant's case. He can only speculate as to the victim's demeanor. Again, due process is concerned solely with delay that is *actually* prejudicial." *Id.* (emphasis in original). Even if the defendant in *Stokes* had demonstrated

some amount of prejudice caused by the delay, it would not have been sufficient to outweigh the lack of government culpability for the delay:

> "Contrary to defendant's assertions, under these facts, the state was entitled to change its position regarding the danger that defendant posed to public safety over the course of eight years. The state did not close the case because it saw defendant as nonthreatening; it closed the case based on a conclusion that defendant's California sentence minimized his threat and, in light of that, pursuing defendant's prosecution in Oregon was not a good use of public resources. When the state's initial calculation turned out to be incorrect, the statute of limitations had not yet run. The sequence of events was not ideal—evidence had been destroyed and, eight years after the initial dismissal of the charges, the case had not yet been resolved. But in terms of the reason for those events, the state's actions do not demonstrate the government culpability and the degree of actual prejudice that violate due process."

*Id.* at 63. Thus, this court affirmed the defendant's convictions. *Id.* at 64.

Those two cases are instructive here. *Davis* and *Stokes* make clear that a defendant alleging a due process violation based on a preindictment delay faces a high bar to establishing actual, substantial prejudice. We have made clear that the focus of the inquiry is on "whether the delay violated our society's fundamental conceptions of justice, fair play, and decency." *Stokes*, 350 Or at 64. The defendants in both of those cases were unable to meet that burden with regard to the prejudice component.

This court has not examined a case where a defendant has met that burden, although one case from the Oregon Court of Appeals has so held. In *State v. Whitlow*, 262 Or App 329, 350, 326 P3d 607 (2014), the Court of Appeals concluded that the defendant faced actual, substantial prejudice as a result of a preindictment delay based on the unavailability of the lead detective who initially investigated the case. The defendant successfully argued that the charges against him were based, in part, on testimony from a victim that included more instances of abuse than those mentioned in the initial report and, without the availability of the detective to

testify as to the thoroughness of his report, the defendant was unable to cross-examine the victim about the inconsistencies in her claims. *Id.* at 345-46. That court concluded that the defendant's arguments were not speculative:

> "[U]nlike in *Davis* and *Stokes*, the nature and content of the 'missing' or 'lost' evidence, [the detective's] putative testimony, and its utility to the defense, is far from 'speculative.' It is hardly 'speculative' to assume that an experienced detective would confirm the thoroughness of his or her interview with the complainant in a sexual abuse investigation and the comprehensive accuracy of the consequent investigative report. Nor is it speculative to posit that such first-person testimony by the principal investigating detective—as opposed to mere admission of the report itself—would likely powerfully buttress an implication of material inconsistency by the complainant."

*Whitlow*, 262 Or App at 348. The case against the defendant was dismissed. *Id.* at 350. That decision is not binding on us, of course, but it provides at least some guidance for understanding what may constitute actual, substantial prejudice.

In this case, the primary question we must answer is whether defendant demonstrated actual, substantial prejudice based on the loss of the Rimrock report or the faded memories of B and Martinez. For the reasons discussed below, we conclude that he did not, and thus, our inquiry ends there.

Defendant presents two primary arguments as to how the loss of the Rimrock report undermined his ability to present his defense. First, defendant argues that he was prejudiced because he was unable to impeach the victim, B, on cross-examination and did not have an opportunity to question her inconsistent recollections of the incident. When B first spoke with Martinez about the incident, she shared that defendant had asked for a "blow job," that she had responded with "[y]ou know I'm only 16, right" and that the two discussed how it is "not illegal if you don't get caught." She said that there were four minutes that she could not account for but then she noticed that defendant slightly penetrated her vagina with his penis. According to B, in that report of the event, defendant then pushed her head toward his penis, which she resisted, before he pushed her away.

At trial, B described the incident by testifying that she and defendant had been at the park smoking marijuana when "all of a sudden" defendant pushed her against the table, trapped her, and inserted his penis inside her vagina. B described resisting defendant's advancements by squeezing her legs together and attempting to move away from defendant. B testified that she repeatedly asked defendant what he was doing and fought to resist defendant. B also testified that, when defendant pushed her head towards his penis in an attempt to force oral sex, B bit at his penis before defendant backed off and left the park.

Defendant claims that B's two accounts of the incident support two inferences: First, that B's initial disclosure to the counselor at Rimrock likely described the events as less violent than B's testimony at trial because her narrative progressively increased in severity and level of force used over time, and, second, that B's versions of events were, at a minimum, inconsistent over time and the Rimrock report would have been inconsistent with at least one of the versions presented. Defendant argues that, if he had had access to the Rimrock report, he could have impeached B regarding the inconsistencies in her story and could have challenged the reliability of B's disclosures. Finally, as to the victim's testimony, defendant contends that the Rimrock report would have revealed the name of the counselor who took the initial disclosure and defendant could have called that counselor as a witness to testify as to the specifics of B's initial disclosure.

Defendant's arguments regarding the missing Rimrock report are too speculative to amount to actual, substantial prejudice. As with the 9-1-1 report in *Davis*, or the lost evidence in *Stokes*, the Rimrock report in this case "might have been favorable to defendant. Or [the report] might have had no evidentiary value, or [it] might have bolstered the case against defendant." *See Davis*, 345 Or at 575. The information contained in the Rimrock report may have included a detailed description of the events, but it is also possible that the report contained nothing more than a general statement that B disclosed a sexual assault by defendant. The Rimrock report may have helped defendant, or it may have supported B's testimony at trial, or it may have done neither.

Importantly, Rimrock is a substance abuse treatment center, not a law enforcement agency, and the record provides no information about the nature and extent of detail about an alleged crime that typically would have been included in an intake report at that center. Thus, there is no basis upon which we can infer that the Rimrock report would more likely than not have contained an amount of information comparable to a police report, much less infer that it would have been inconsistent with the later police reports that are available on the record. Accordingly, defendant has failed to demonstrate actual—not presumed or speculative—substantial prejudice from the loss of the Rimrock report.

Next, defendant alleges that he was prejudiced by the preindictment delay because Martinez's and B's memories had faded as a result of the time between B's report of the sexual assault and defendant's indictment. Defendant claims that he was prejudiced by B's faded memory at the time of trial because she had difficulty recalling the details of the incident and her possible interactions with defendant after the assault occurred. Defendant also claims prejudice as a result of Martinez's faded memory. Defendant explains that the case was initially assessed as "Rape III, under 16, no force" but, because Martinez could not remember why it was designated that way, defendant could not meaningfully question Martinez about the discrepancy between the initial designation and the ultimate crime that he was charged with.

Defendant's assertions regarding B's faded memories are too speculative to amount to actual, substantial prejudice. Defendant relies on alleged inconsistencies in B's testimony at trial about her possible interactions with defendant after the sexual assault occurred to suggest that those details, if B had remembered them fully, would have allowed defendant to question why B continued to voluntarily interact with defendant after the alleged assault. But defendant fails to show that B's testimony would have assisted his defense or how her ongoing interactions with defendant were inconsistent with her allegations of the details surrounding the assault. As it relates to B's memory, defendant's arguments do not establish actual, substantial prejudice.

Defendant's argument related to Martinez's faded memory is less tenuous. Defendant does not argue that Martinez's memory loss was a general loss of memory over time, but instead that Martinez's memory loss related to the specific inconsistencies in the initial designation and the ultimate charge, and he was unable to use that information to undermine B's credibility at trial.

Defendant's claim, however, still fails to amount to actual, substantial prejudice. The record indicates that someone initially designated the crime as "Rape III, under 16, no force," but it is unclear who made that designation. Even assuming that Martinez made that designation, it would have been useful to defendant only if it could have been based on information that supported it, and all of the information that Martinez had—the Prineville report and the recorded statements Martinez obtained from B—was contrary to the designation. Moreover, defendant himself had the information that Martinez had and has not pointed to any basis to support the designation. Thus, whether Martinez could recall the reason for the initial crime designation or not, defendant does not establish prejudice. Defendant's claims are speculative, at best, and he does not meet the burden of establishing actual, substantial prejudice based on Martinez's faded memory.

Finally, the parties also disagree about how the court ought to weigh the state's level of culpability—negligence—against the prejudice suffered by defendant due to the preindictment delay. Because defendant did not demonstrate the requisite actual, substantial prejudice required to support his allegation of a due process violation based on the preindictment delay, we need not resolve the parties' dispute as to that second question. *See Barken*, 412 F3d at 1134 ("First, a defendant must prove that he suffered actual, non-speculative prejudice from the delay, meaning proof that demonstrates exactly how the loss of evidence or witnesses was prejudicial. The defendant's burden to show actual prejudice is heavy and is rarely met. The second part of the test applies only if the defendant has demonstrated actual prejudice."). Our inquiry thus ends here.

### III.   CONCLUSION

In sum, we conclude that defendant has failed to meet his burden to establish that he was actually prejudiced by the absence of the Rimrock report or Martinez's faded memories. Despite the state's negligence in causing the substantial preindictment delay, we hold that the trial court did not err in denying defendant's motion to dismiss.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.